

# NUMBER 13-19-00508-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LAWRENCE LEON CLOUD,                      Appellant,

v.

THE STATE OF TEXAS,                        Appellee.

### On appeal from the 379th District Court
### of Bexar County, Texas.

## MEMORANDUM OPINION

### Before Justices Longoria, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Tijerina

A jury convicted appellant Lawrence Leon Cloud of unlawful possession of a firearm, a third-degree felony, and sentenced him to eight years' imprisonment. *See* TEX. PENAL CODE ANN. § 46.04. By three issues, Cloud (1) challenges the sufficiency of the evidence to support his conviction, (2) challenges the trial court's denial of his motion to suppress evidence, and (3) claims the State's arguments were impermissible and

prejudicial. We affirm.[1]

## I. BACKGROUND

The evidence at trial was as follows. Special Agent Caroll Frost of the Texas Department of Public Safety testified that on May 9, 2018, he got a license plate reader hit on a stolen vehicle located at a Days Inn in San Antonio, Texas. When he arrived at the Days Inn, he confirmed the vehicle was stolen and requested back up. After viewing surveillance video, Agent Frost saw a man, later identified as Cloud, and a woman, later identified as Dolores Garcia, get out of the vehicle and walk into the hotel building.

Agent Frost testified he was walking down the hallway of the Days Inn when he noticed Cloud exit his room and make his way towards the lobby. Once Special Agents Ross Rigby and Andrew Conquest arrived to assist, Agent Frost approached Cloud, displayed his badge, and introduced himself as a state police officer. Agent Frost stated that Cloud immediately ran. The agents chased Cloud to the door of his room where a struggle ensued as they attempted to apprehend him. Garcia then opened the door to the room and exclaimed that Cloud had a weapon on him. Agent Frost testified that as the agents subdued Cloud and got him in handcuffs, Agent Conquest removed a loaded .45 caliber pistol from Cloud's waistband. Agent Conquest testified that as he was patting Cloud down, he asked Cloud if he had any weapons on him to which Garcia volunteered, "Oh, he's got a gun!" Agent Conquest stated, "sure enough, out of his waistband, I found

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

a pistol, a black pistol on [Cloud's] waistband." The pistol was admitted into evidence.

Agent Conquest further testified that he approached the front desk employee about obtaining video surveillance regarding the incident. According to Agent Conquest, the desk clerk was able to rewind the video but was not able to download it. As a result, Agent Conquest used the recording device on his personal cellphone to record a playback of the video surveillance. This cellphone recording was played for the jury. In addition to the video surveillance, the State played a jail recording of a phone call between Cloud and his sons. In the recording, Cloud states, "they caught me with my .45 on me." Cloud, however, testified that he was referencing another gun at that point, and it was not the same .45 gun that was at issue. Cloud stated that although he made that comment, "that's not what [he] meant," and it was "a slip of the tongue," and what he really meant was that the gun should not have been in his room.

Cloud further testified that when he was on the ground during the scuffle, he heard Agent Frost say, "He's got a gun or there's a gun." Cloud stated that he thinks Agent Conquest "drew his [own] service pistol at that point in time and swear[s] he stated he was clearing his gun, it was actually his own service pistol." Cloud further denied that the gun belonged to him and instead blamed Garcia because previously there had been people in the hotel room. Cloud admitted he was a convicted felon. The jury found Cloud guilty of unlawful possession of a firearm, and this appeal ensued.

## II. LEGAL SUFFICIENCY

By his first issue, Cloud contends that the evidence was legally insufficient to support his conviction because the State failed to prove beyond a reasonable doubt that

he possessed the firearm.

**A.    Standard of Review**

When reviewing claims of legal insufficiency, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014). The factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the testimony and is presumed to have resolved any conflicts in the evidence in favor of the verdict. *See Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008); *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (giving deference to the factfinder "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

"Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim App. 2013) (citing *Hooper*, 214 S.W.3d at 13). Juries are permitted "to draw reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper*, 214 S.W.3d at 15.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex.

4

Crim. App. 2018) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. In this case, a hypothetically correct charge would instruct the jury to find Cloud guilty of unlawful possession of a weapon if he possessed a firearm before the fifth anniversary of his release from confinement or supervision following a felony conviction. *See* TEX. PENAL CODE ANN. § 46.04(a)(1). A person "possesses" a firearm if they have "actual care, custody, control, or management" of the weapon. *See id.* § 1.07(a)(39). Cloud only challenges whether the evidence was sufficient to prove that he possessed the gun.

**B.    Discussion**

In this case, Special Agents Frost, Conquest, and Rigby all testified that they recovered a gun from Cloud's waistband after Garcia stated that he had a weapon on him. In the surveillance video, Agent Conquest is seen coming up from a crouched position with the gun in his hand. The jury could have believed the special agents' testimony that they had immediately retrieved the gun from Cloud's waistband after Garcia tipped them off. The jury also heard Cloud admit to having a .45 gun in the jail call. Although Cloud denied possession of the gun, claimed the gun belonged to Agent Conquest, and later claimed that Garcia had other occupants in the room with the gun possibly belonging to one of them, we presume the jury resolved the conflicting inferences that can be drawn from this evidence in favor of the State. *See Bartlett*, 270 S.W.3d at

5

150. Viewing the evidence in the light most favorable to the State, we conclude that a rational juror could have found that Cloud possessed the gun beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Whatley*, 445 S.W.3d at 166; *Harris*, 532 S.W.3d at 529. We overrule his first issue.

## II.     MOTION TO SUPPRESS

By his second issue, Cloud challenges the denial of his motion to suppress evidence, arguing that there was insufficient probable cause to arrest or search him. The State argues that Cloud failed to preserve error. We agree with the State.

"To preserve error, the record must show that appellant made a timely request, objection, or motion, and that the trial court ruled on it." *Garza v. State*, 126 S.W.3d 79, 81–82 (Tex. Crim. App. 2004); *see* TEX. R. APP. P. 33.1. While Cloud filed a motion to suppress, he failed to request a hearing on his motion, and he did not request a pretrial ruling from the trial court. At trial, the jury heard testimony from the State's witnesses, and the jury saw video corroborating the testimony from the special agents. The State then rested its case-in-chief before Cloud brought the motion to suppress to the trial court's attention. Cloud did not obtain a ruling denying his motion to suppress until after the jury heard the special agents' testimony and saw the video of the arrest. *See Strehl v. State*, 486 S.W.3d 110, 112 (Tex. App.—Texarkana 2016, no pet.) ("If the jury hears the evidence before the trial court rules on the motion to suppress, the motion is forfeited."). To be timely, a motion to suppress must be presented before the evidence or testimony is admitted. *Weeks v. State*, 396 S.W.3d 737, 740 (Tex. App.—Beaumont 2013, pet. ref'd). Cloud failed to preserve his motion by waiting to urge his motion until after the jury

6

heard and saw the allegedly objectionable evidence. *See Strehl*, 486 S.W.3d at 112. We overrule his second issue.

### III. IMPROPER ARGUMENT

By his third issue, Cloud asserts the State made many argumentative statements throughout the trial and allowed its witnesses to improperly opine on the stand.

First, Cloud complains that the State "became argumentative and asked for the witness'[s] opinion on the evidentiary value of fingerprinting a weapon in these kinds of cases." At trial, the State asked Agent Frost about obtaining fingerprints from the gun he recovered from Cloud. Agent Frost stated he did not obtain fingerprints because in his opinion the case was "pretty solid." Cloud objected. The trial court sustained his objection and instructed the jury to disregard that portion of Frost's testimony.

"On appeal, we generally presume the jury follows the trial court's instructions in the manner presented." *Thrift v. State,* 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). To rebut this presumption, a defendant must set forth evidence demonstrating that the jury failed to follow the trial court's instruction to disregard. *See id.* Because we presume that the jurors followed the court's instructions and Cloud has not set forth evidence demonstrating the jury failed to follow the trial court's instruction to disregard, we conclude that Cloud received the relief he requested. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Thrift*, 176 S.W.3d at 224.

Second, Cloud complains that the State "made an argumentative statement claiming [that] because Cloud has carried a weapon on him before, he must have been carrying one on the day in question." The State argues that Cloud did not receive an

7

adverse ruling regarding his argumentative objection. The line of questioning is as follows:

> [State]: And you testified that you actually carry that gun, right?
>
> [Cloud]: No. I wasn't carrying on that day in time, no.
>
> [State]: No, that's not my question, Mr. Cloud. The question is you do have a handgun that you carry, right?
>
> [Cloud]: Yeah. Yeah.
>
> [State]: Okay. When was the last time that you carried that?
>
> [Cloud]: Objection, Your Honor, may we approach.

Outside the presence of the jury, Cloud's counsel informed the trial court that he wanted to take Cloud on voir dire. The trial court asked if there was "any objection to the last question," and Cloud responded, "There are no objections at this point, no." After trial counsel took Cloud on voir dire, Cloud objected under rule 403 grounds. *See* TEX. R. EVID. R. 403. After confirming that this objection was limited to rule 403, the trial court sustained the objection. When the jury returned, the State did not resume questioning regarding this matter.

Before an appellant may complain on appeal about an erroneous jury argument, the appellant must show an objection and pursuit of the objection to an adverse ruling. *Moreno v. State,* 195 S.W.3d 321, 329 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); TEX. R. APP. P. 33.1. Here, Cloud did not make an argumentative objection for the trial court to have ruled on. Even if Cloud had properly objected, Cloud still waived any error when he failed to: (1) receive an adverse ruling, (2) request a limiting instruction, and (3) request a mistrial. *See McGinn v. State,* 961 S.W.2d 161, 165 (Tex. Crim. App. 1998).

Third, Cloud complains of the State's statement during closing argument: "If you

were to render a not guilty verdict, you will be calling [the special agents] liars today." Cloud immediately objected, and the trial court sustained the objection. However, Cloud did not request an instruction to disregard the State's comment, and he did not move for a mistrial. If a trial court sustains an objection asserting an improper jury argument, to preserve error on appeal, the defendant must additionally request an instruction to disregard the complained-of argument if such an instruction could cure the prejudice or move for a mistrial if the prejudice arising from an erroneous jury argument is incurable. *Id.* Because Cloud did not request an instruction to disregard or move for a mistrial, he has not preserved this complaint for our review. *See id.*; *Campos v. State*, 946 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (holding that a defendant must first object to the offensive statement, then request an instruction to disregard, and finally move for a mistrial). We overrule his last issue.[2]

### IV. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
24th day of June, 2021.

---

[2] Cloud further states, the "State insinuated multiple times Cloud is an extremely bad man, someone who did not warrant living in the community." However, Cloud does not direct us to citations to appropriate authority or portions of the record to support his contention. Because Cloud does not support these complaints with citations to the record or appropriate authority, Cloud presents nothing for our review. *See* TEX. R. APP. P. 38.1(i); *State v. Gonzalez*, 855 S.W.2d 692, 697 (Tex. Crim. App. 1993) ("When a party raises a point of error without citation of authorities or argument, nothing is presented for appellate review.").